IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CAPITOL RADIOLOGY LLC, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>UNIVERSITY OF MARYLAND )<br>MEDICAL SYSTEM, *et al.*, )<br>)<br>    Defendants. )<br>) | Civil Action No. 24-cv-02548-LKG<br><br>Dated:  August 12, 2025 |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this civil action, the Plaintiff, Capitol Radiology LLC ("Capitol Radiology"), brings claims against the Defendants, the University of Maryland Medical System ("UMMS"), the University of Maryland Capital Region Health Inc. ("UM Capital"), Advanced Radiology at Capital Region, LLC ("Advanced Radiology") and RadNet, Inc. ("RadNet"), arising from a joint venture (the "Joint Venture") by and between UMMS and RadNet for the provision of outpatient radiology services in Laurel, Maryland, pursuant to Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 18116, Section 1557 of the Affordable Care Act, 42 U.S.C. § 2000d, the Sherman and Clayton Acts, 15 U.S.C. § 1, *et seq.* and § 12, *et seq.*, the Maryland Antitrust Act, Md. Code Ann., Comm. Law § 11-201, *et seq.*, the United States Constitution and Maryland law.  *See* ECF No. 6.  The Defendants have moved to dismiss the second amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF Nos. 21 and 22.  These motions are fully briefed.  ECF Nos. 21, 22, 25, 26, 27 and 28.  No hearing is necessary to resolve the motions.  L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** Defendants Advance Radiology and RadNet's motion to dismiss (ECF No. 21); (2) **GRANTS** Defendants UMMS and UM Capital's motion to dismiss (ECF No. 22); and (3) **DISMISSES** the second amended complaint.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

In this civil action, the Plaintiff brings various claims against the Defendants arising from a Joint Venture by and between UMMS and RadNet for the provision of outpatient radiology services on the campus of the Laurel Regional Medical Center of UMMS (the "Laurel Campus"), located in Laurel, Maryland. *See* ECF No. 6. Specifically, the Plaintiff asserts the following nine claims in the second amended complaint: (1) violation of the UMMS Bidding Requirement, pursuant to Md. Code Ann., Educ. § 13-303(e), against Defendants UMMS, UM Capital and RadNet (Count I); (2) Race and Sex Discrimination, pursuant to Md. Code Ann., Educ. § 13-303(d), against Defendants UMMS and UM Capital (Count II); (3) violation of Article 24 of the Maryland Declaration of Rights of the Maryland Constitution against Defendants UMMS, UM Capital and RadNet (Count III); (4) violation of Maryland Antitrust Law against Defendants UMMS, UM Capital and RadNet (Count IV); (5) Breach of Contract against Defendant RadNet (Count V); (6) Tortious Interference with Contract against Defendants UMMS and UM Capital (Count VI); (7) violation of Title VI of the Civil Rights Act, as applicable by Section 1557 of the Affordable Care Act against Defendant UMMS (Count VII); (8) violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution against Defendants UMMS and RadNet (Count VIII); and (9) violation of the Sherman Antitrust Act against Defendants UMMS and RadNet (Count IX). *See id*. ¶¶ 87-124.

The Parties

Plaintiff Capitol Radiology is an African American-owned radiology facility located in Laurel, Maryland. *Id*. at ¶ 2. Dr. Dorian Thomas is an African American woman and the owner of Capitol Radiology. *Id*. at ¶ 1.

Defendant UMMS is a not-for-profit corporation established under the laws of Maryland, with its principal place of business located in Baltimore, Maryland. *Id*. at ¶ 18. The Maryland General Assembly enacted legislation to create Defendant UMMS "to provide medical care of the type unique to University medical facilities for the citizens of the State and region and . . . to provide a clinical context for education and research conducted by the faculty of the University."

---

[1] The facts recited in this memorandum opinion are taken from the second amended complaint, the Defendants' respective motions to dismiss, and the Plaintiff's responses in opposition thereto. ECF Nos. 6, 21, 22, 25 and 26.

Md. Code Ann., Educ. § 13-302(1). The members of the UMMS Board of Directors are appointed by the Governor, with the advice and consent of the Maryland Senate, and the Board of Directors must "maintain, create, and develop specialty care services appropriate to an academic medical institution to meet the needs of the State and region." Md. Code Ann., Educ. §§ 13-303(c)(2) and 13-304(b).

Defendant UM Capital is a not-for-profit corporation with its principal place of business located in Largo, Maryland. *Id*. at ¶ 19. UM Capital is a member organization of UMMS and UM Capital has its own Board of Directors. *Id*.; ECF No. 11-8 at 3.

Defendant Advanced Radiology is a limited liability company with its principal place of business located in Laurel, Maryland. ECF No. 6 at ¶ 20.

Defendant RadNet is a corporation with its principal place of business located in Los Angeles, California. *Id*. at ¶ 21.

Capitol Radiology And The Asset Purchase Agreement

On February 1, 2005, Capitol Radiology purchased an existing radiology facility from Radiologix, Inc. ("Radiologix"). *See* ECF No. 11-1. Following the purchase of this facility, Capitol Radiology began to provide outpatient imaging services on the Laurel Campus. ECF No. 6 at ¶¶ 26 and 28.

Capitol Radiology purchased the facility pursuant to an asset purchase agreement (the "Asset Purchase Agreement"). *See* ECF No. 11-1. Relevant to this dispute, the Asset Purchase Agreement addresses future MRI services and provides that:

> Section 6.11 <u>Future MRI Reading Agreement</u>. The parties acknowledge the existence of that certain Laurel MRI Physician Services Agreement dated as of February 1, 2005, between Dr. Thomas and Korsower & Pion Radiology, P.C., pursuant to which Dr. Thomas has agreed to provide MRI supervision and interpretation services at the Laurel MRI facility located at 7400 Van Dusen Road in Laurel, Maryland ("<u>Laurel MRI</u>"). If, after the date of this Agreement, Seller and/or Radiologix desire to enter into an agreement to engage one or more physicians to provide MRI supervision and interpretation services at Laurel MRI (a "Future MRI Reading Agreement"), then (i) Seller and/or Radiologix (as applicable) shall inform Purchaser of such opportunity, and (ii) Purchaser shall have the exclusive right, for a period of thirty (30) days after being informed of such opportunity, to negotiate with Seller and/or Radiologix (as applicable) a Future MRI Reading Agreement upon commercially reasonable terms and conditions (or such other terms and conditions as may be required by customers of Seller and/or Radiologix to provide

> competitive outpatient imaging services, such as, by way of example and not limitation, terms and conditions concerning turn-around times and other service standards required by Laurel Regional Medical Center). If the parties are unable to finalize a Future MRI Reading Agreement within the thirty (30) day period contemplated by the preceding sentence, then Seller and/or Radiologix (as applicable) may negotiate and enter into a Future MRI Reading Agreement with any other physician or physician group. The exclusive negotiation right set forth in this Section 6.14 shall terminate at such time as either Dr. Thomas or Purchaser ceases to provide professional radiology services on the campus of Laurel Regional Medical Center.

*See id*. at 15.

Capitol Radiology alleges in the second amended complaint that, prior to 2018, the then-Chief Medical Officer of UMMS, Dr. Stephen Bartlett, met with the company several times to discuss a potential collaboration and that "Dr. Bartlett thought a collaboration between UMMS and Capitol Radiology was a natural fit since Capitol Radiology already was on the campus supporting the community." ECF No. 6 at ¶¶ 55-56. Capitol Radiology also alleges that "Dr. Bartlett expressed his conviction that it would be value added for UMMS to have at least one Black-owned radiology group in the University of Maryland family since it serves the largest majority minority community in the state" and "advised Capitol Radiology that there was no need for additional outpatient radiology services on the small, Laurel campus and that Capitol Radiology would make an excellent service provider for UMMS." *Id*. at ¶¶ 6 and 57; *see also id*. at ¶ 59.

Capitol Radiology further alleges, however, that Defendant UMMS did not honor this promise. Specifically, Capitol Radiology alleges that, Defendants "UMMS and RadNet then secretly entered into a joint-venture agreement to build a new outpatient radiology center on the Laurel campus—just 50 yards away from" Capitol Radiology. *Id*. at ¶¶ 5 and 7. In this regard, Capitol Radiology alleges that the Joint Venture began when Defendant UMMS, acting through UM Capital, issued a request for information ("RFI") for the provision of outpatient radiology services on the Laurel campus to particular imaging services companies that met its criteria: (1) existing relationship with UMMS; (2) financial ability to develop and staff two imaging centers; and (3) appropriate licenses and a record of compliance with the applicable regulatory authorities. *Id*. at ¶ 73; ECF No. 11-8 at 2.

Capitol Radiology contends that the company met the criteria that UM Capital used for

the RFI to pre-screen potential partners, because Capitol Radiology had "a pre-existing relationship with UMMS through the UMMS health plan, with which it had a provider agreement." ECF No. 6 at ¶ 75. But Capitol Radiology contends that Defendant UMMS violated the State of Maryland's bidding rules, by failing to ask Capitol Radiology and its owner Dr. Thomas to submit a bid for the contract to provide outpatient radiology services on the Laurel Campus. *Id*. at ¶¶ 10 and 73.

Given this, Capitol Radiology alleges in Count I of the second amended complaint that Defendants UMMS and UM Capital violated Md. Code Ann., Educ. § 13-303(e), by entering into the Joint Venture with RadNet to provide outpatient radiology services on the Laurel Campus. *Id*. at ¶¶ 87-93. In this regard, Capitol Radiology alleges that the Joint Venture did not comply with the requirement that the UMMS Board of Directors "conduct procurement activities consistent with minority purchasing standards applicable to State government agencies." *See id*. at ¶¶ 87-90 (citing Md Code Ann., Educ. § 13-303(e)).

Capitol Radiology also alleges in Count II of the second amended complaint that Defendants UMMS and UM Capital also discriminated against it, upon the basis of race and sex, by "[c]reating a competing outpatient radiology center on the Laurel campus, and excluding Capitol Radiology from the bidding process," in violation of Md. Code Ann., Educ. § 13-303(d). *Id*. at ¶¶ 12 and 93-95. In addition, in Counts III and VIII of the second amended complaint, Capitol Radiology further alleges that Defendants UMMS, UM Capital and RadNet violated Article 24 of the Maryland Declaration of Rights, and that Defendants UMMS and RadNet violated the Equal Protection Clause of the Fourteenth Amendment, by "entering into a secret joint-venture agreement for outpatient radiology services with RadNet" and "excluding Capitol Radiology, a black- and female-owned business, from the bidding process." *Id*. at ¶ 98; *see also id*. at ¶ 119.

In Counts IV and IX of the second amended complaint, Capitol Radiology also alleges that Defendants UMMS, UM Capital and RadNet violated state and federal antitrust laws, because, among other things, the Joint Venture constitutes an "unlawful restraint of trade [that] will have an adverse effect on consumers in Prince George's County." *Id*. at ¶103. In this regard, Capitol Radiology alleges that Defendant RadNet has monopolized the market by purchasing the company that was the administrator of the United Health Care Network, cancelling Capitol Radiology's participation agreement and locking Capitol Radiology out of the

insurance network and "consolidat[ing] ownership of the small, physician-owned and operated radiology facilities in the State of Maryland and Prince George's County . . . open[ing] radiology centers near its rival in Maryland, American Radiology, and siphon[ing] off enough patient volume to make the centers agree to sell to them." *Id*. at ¶¶ 79-80.

Capitol Radiology further alleges in Count V of the second amended complaint that Defendant RadNet, as the successor-in-interest to Radiologix, "breached the [Asset Purchase Agreement], by failing to offer Capitol Radiology the right-of-first refusal for providing radiology services on the Laurel campus." *Id*. at ¶¶ 26 and 106. Capitol Radiology also alleges in Count VI of the second amended complaint that Defendants UMMS and UM Capital tortiously interfered with the Asset Purchase Agreement, by failing to offer Capitol Radiology the right-of-first refusal. *Id*. at ¶ 110.

Lastly, Capitol Radiology alleges in Count VII of the second amended complaint that Defendant UMMS discriminated against it, upon the basis of race, in violation of Title VI of the Civil Rights Act of 1964, made applicable by Section 1557 of the Affordable Care Act, by entering into the Joint Venture. *Id*. at ¶ 113. And so, Capitol Radiology seeks, among other things, to recover monetary damages from the Defendants and to enjoin the Defendants "from commencing outpatient radiology services on the Laurel campus until such time as Plaintiff's rights are restored." *Id*. at Prayer for Relief.

### B. Procedural History

On September 3, 2024, the Defendants removed this action from the Circuit Court for Prince George's County, Maryland. ECF No. 1.

On October 4, 2024, Defendants RadNet and Advanced Radiology filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 21 and 21-1. On October 4, 2024, Defendants UMMS and UM Capital filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 22 and 22-1.

On November 8, 2024, Capitol Radiology filed responses in opposition to the Defendants' respective motions to dismiss. ECF Nos. 25 and 26. On November 25, 2024, the Defendants filed their respective reply briefs. ECF Nos. 27 and 28.

The Defendants motions to dismiss having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### B. Maryland Code Section 13-303 And Private Rights Of Action

Section 1303 of the Maryland Code, Education Article governs members of the UMMS Board of Directors. Section 13-303(d) provides that: "[t]he Board of Directors shall operate the medical system without discrimination based upon race, creed, sex, or national origin." *See* Md. Code Ann., Educ. § 13-303(d). Section 13-303(e) provides that: "[t]he Board of Directors will conduct procurement activities consistent with minority purchasing standards applicable to State government agencies." *See* Md. Code Ann., Educ. § 13-303(e).

When determining whether an implied private right of action exists under a statute, Maryland courts apply the following test: (1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, to create or deny such a remedy; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. *Baker v. Montgomery County*, 50 A.3d 1112, 1122 (Md. 2012) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)); *see also Aleti v. Metro. Balt., LLC*, 279 A.3d 905, 921 (Md. 2022). The "central inquiry

remains whether [the legislative body] intended to create, either expressly or by implication, a private cause of action." *Baker*, 50 A.3d at 1122 (alteration in original) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)). Given this, there is a "strong inference that the legislature intended the statute to carry an implied cause of action" when a "statute's language provides a right to a particular class of persons." *Id*. at 1123.

But such an "inference becomes attenuated when the statute is framed as a general prohibition or a command to a governmental entity or other group or confers a generalized benefit." *Id*. (citation and internal quotation marks omitted). And so, a "private right of action will not be implied from a statute that was designed to confer only a general benefit on the public at large." *Clark v. Bank of Am., N.A.*, 561 F. Supp. 3d 542, 555 (D. Md. 2021) (citation omitted); *see also Univs. Rsch. Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772-73 (1981).

### C. Section 1983 And Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.[2] To state an equal protection claim, a plaintiff must plead facts that show that the alleged unconstitutional conduct was conducted by a state actor. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 923 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 1002-03 (1982); *see Ashton v. Brown*, 660 A.2d 447, 464 (Md. 1995).

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors. *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages). "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Hammons v. Univ. of Maryland Med. Sys. Corp.*, 551 F. Supp. 3d 567, 580 (D. Md.

---

[2] Article 24 of the Maryland Declaration of Rights "embodies the concept of equal protection of the laws to the same extent as the Equal Protection Clause of the Fourteenth Amendment." *Murphy v. Edmonds,* 601 A.2d 102, 107 (Md. 1992) (citations omitted). And so, Article 24 is interpreted *in pari materia* with the Fourteenth Amendment and Maryland has accepted Supreme Court decisions interpreting that clause as "persuasive authority in cases involving the equal treatment provisions of Article 24." *Id*. at 108 (citation omitted).

2021) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). In this regard the United States Court of Appeals for the Fourth Circuit has held that "Section 1983's color-of-law prerequisite is synonymous with the… state-action requirement applicable to [Equal Protection Clause] claims" and that "[b]oth inquiries demand that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State," based on a totality of the circumstances. *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (internal quotation marks and citation omitted); *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 115-16 (4th Cir. 2022) (citation omitted), *cert. denied*, 143 S. Ct. 2657 (2023).

### D. Sovereign Immunity

The Eleventh Amendment of the United States Constitution bars a suit in federal court against a state, one of its agencies or departments, or one of its officials acting in an official capacity, without a valid abrogation or waiver of the state's sovereign immunity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *see also* U.S. Const. amend. XI; Md. Const., art IV, § 1. The United States Supreme Court has made clear that "States or governmental entities that are considered arms of the State" are protected by sovereign immunity. *Will*, 491 U.S. at 70-71 (internal quotation marks and citation omitted). Relevant here, this Court has held that "UMMS is a governmental entity, that is an arm or instrumentality of government for purposes of [a plaintiff's] assertion of his individual constitutional rights" and that "UMMS is an arm of the [S]tate for purposes of sovereign immunity." *Hammons*, 551 F. Supp. 3d at 584-587.[3]

### E. Title VI And Section 1557 Of The Affordable Care Act

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be

---

[3] The Supreme Court has held that a corporation is an "agency of the government" subject to the "constitutional obligations" of the Government where the Government: (1) creates a corporation by special law; (2) for the furtherance of governmental objectives; and (3) retains for itself permanent authority to appoint a majority of the directors of that corporation. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995). The Court considers the following four factors to determine whether an agency of the Government is entitled to Eleventh Amendment immunity: (1) whether the state treasury will be responsible for paying any judgment that might be awarded; (2) whether the entity exercises a significant degree of autonomy from the state; (3) whether it is involved with local versus statewide concerns; and (4) how the entity is treated as a matter of state law. *Ram Ditta v. Md. Nat'l Cap. Park & Planning Comm'n*, 822 F.2d 456, 457-58 (4th Cir. 1987).

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Section 1557 of the Affordable Care Act provides that "an individual shall not, on the ground prohibited under [T]itle VI … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

To state a claim under Section 1557, a plaintiff must allege facts that state a plausible claim under Title VI. *Taite v. Express Primary Care, LLC*, No. MJM-24-327, 2024 WL 3200614, at *4 (D. Md. Jun. 27, 2024).  And so, a plaintiff must allege facts to show that: (1) the defendant is a recipient of federal financial assistance and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin. *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *3 (D. Md. Nov. 16, 2021) (citing 42 U.S.C. § 2000d; *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001)); *see also Lucas v. VHC Health*, 128 F.4th 213, 221 (4th Cir. 2025).

### F.  The Sherman Act And Clayton Act

The Sherman Antitrust Act prohibits restraints that are "unreasonably restrictive of competitive conditions" and the monopolization or attempted monopolization of a particular market. *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 508 (4th Cir. 2002) (citations and internal quotation marks omitted); 15 U.S.C. §§ 1 and 2.  Section 4 of the Clayton Act provides a private plaintiff with a private right of action to enforce federal antitrust laws in a suit for damages. *See* 15 U.S.C. § 15(a) (providing that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor.").  And so, a private plaintiff may seek damages against a defendant for violation of the Sherman Act or the Clayton Act, pursuant to Section 4 of the Clayton Act.

To bring a suit for an antitrust violation pursuant to Section 4 of the Clayton Act, a private plaintiff must show an "antitrust injury" to have standing. *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 311 (4th Cir. 2007) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983).  An "antitrust injury" is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  And so, to determine whether a plaintiff has standing to bring a claim against a

defendant for violation of the Sherman Act or Clayton Act, pursuant Section 4 of the Clayton Act, the Court considers "(1) the causal connection between an antitrust violation and harm to the plaintiffs, and whether that harm was intended; [and] (2) whether the harm was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws." *Novell*, 505 F.3d at 315 (quoting *Kloth v. Microsoft*, 444 F.3d 312, 324 (4th Cir. 2006)).[4]

### G. Breach Of Contract And Tortious Interference With Contract Claims

Lastly, the elements of a breach of contract claim under Maryland law are: (1) contractual obligation; (2) a material breach of that obligation; and (3) damages. *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. 16-3431, 2018 WL 1471682, at *17 (D. Md. Mar. 23, 2018) (citations omitted). Relevant to this dispute, this Court has recognized that "a person cannot be held liable under a contract to which he was not a party." *Hosack v. Utopian Wireless Corp.*, No. CIV.A. DKC 11-0420, 2011 WL 1743297, at *3 (D. Md. May 6, 2011) (citations and internal quotation marks omitted); *see also Snider Bros., Inc. v. Heft*, 317 A.2d 848, 851 (Md. 1974). A parent corporation also generally cannot be held liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). In addition, the elements of tortious interference with contract under Maryland law are: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional interference with that contract; (4) hindrance to the performance of the contract; and (5) resulting damages to the plaintiff. *See Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. 1991); *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994). And so, "[t]o establish tortious interference with prospective contractual relations, it is necessary to prove both a tortious intent and improper or wrongful conduct." *Macklin.*, 639 A.2d at 119 (internal citation omitted).

## IV. ANALYSIS

The Defendants have moved to dismiss the second amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), upon several grounds. First, Defendants Advanced Radiology and RadNet

---

[4] The Plaintiff also alleges antitrust claims under Maryland law. ECF No. 6 at ¶¶ 101-104; *see also* the Maryland Antitrust Act, Md. Code Ann., Comm. Law § 11-202(a) ("the purpose of this subtitle is to complement the body of federal law governing restraints of trade" and "in construing this subtitle, the courts [shall] be guided by the interpretation given by the federal courts to the various federal statutes…including [the Sherman and Clayton Acts, 15 U.S.C. § 1, *et seq*., and §12, *et seq*.]"). The Fourth Circuit has held that such state claims must fail, if they would fail under similar federal law. *Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 379 (4th Cir. 1992); *see also Balt. Scrap Corp. v. David J. Joseph Co.*, 81 F. Supp. 2d 602, 620 (D. Md. 2000) (same).

11

argue that the Court should dismiss the claims brought against them in this matter for the following reasons: (1) there are no factual allegations in the second amended complaint to support the claims brought against Defendant Advanced Radiology; (2) Count I of the second amended complaint fails as a matter of law, because Defendant RadNet is not subject to Md. Code Ann., Educ. § 13-303(e); (3) Counts III and VIII also fail as a matter of law, because Defendant RadNet is neither a state actor, nor subject to federal or state equal protection laws; (4) Capitol Radiology fails to state plausible antitrust claims in Counts IV and IX of the second amended complaint, because the second amended complaint fails to plausibly allege a relevant market, an unreasonable restraint of trade, actual or attempted monopolization and an antitrust injury; and (5) Count V of the second amended complaint should be dismissed, because Defendant RadNet is not a party to the alleged contract and Capitol Radiology misconstrues the plain language of the contract. *See* ECF No. 21-1 at 4-21.  Lastly, these two Defendants also argue that the Court should strike certain allegations set forth in the second amended complaint, as "immaterial, impertinent, and scandalous," pursuant to Fed. R. Civ. P. 12(f).  *See id*. at 21-24.  And so, Defendants Advanced Radiology and RadNet request that the Court: (1) dismiss the claims brought against them in this matter and (2) strike certain allegations contained in the second amended complaint.  *See id*. at 24.

        Defendants UMMS and UM Capital also seek to dismiss the claims brought against them in the second amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), upon the following grounds: (1) Count I of the second amended complaint should be dismissed, because there is no private right of action under Md. Code Ann., Educ. § 13-303(e), the Plaintiff lacks standing to assert a claim under Md. Code Ann., Educ. § 13-303(e) and the second amended complaint fails to state a plausible claim under Md. Code Ann., Educ. § 13-303(e); (2) Count II of the second amended complaint also fails to state a claim under Md. Code Ann., Educ. § 13-303(d), because there is no private right of action under Md. Code Ann., Educ. § 13-303(d) and the second amended complaint fails to plausibly allege a violation of this statute; (3) Counts III and VIII of the second amended complaint fail to state plausible federal and state equal protection violations; (4) Count VII of the second amended complaint fails to state a plausible claim for violations of Title VI and Section 1557 of the Affordable Care Act, because the Plaintiff lacks standing to bring this claim and there are no factual allegations to support a claim of intentional discrimination; (5) Counts IV and IX of the second amended complaint fail to state claims for

federal and state antitrust violations; and (6) Count VI of the second amended complaint fails to state a claim for tortious interference with contract, because, among other things, the Plaintiff has not pled facts to show that Defendants UMMS and UM Capital intentionally interfered with the Asset Purchase Agreement. *See generally* ECF No. 22-1. Lastly, Defendants UMMS and UM Capital argue that the Court should dismiss the Plaintiff's claims for punitive damages. *See id*. at 29-30. And so, Defendants UMMS and UM Capital request that the Court dismiss the claims brought against them in the second amended complaint. *See id*. at 30.

In its responses in opposition to the Defendants' respective motions, Capitol Radiology counters that it states plausible claims against Defendant Advanced Radiology in this matter and that the Court should not dismiss Counts I and II of the second amended complaint, because: (1) Md. Code Ann., Educ. § 13-303(d) and (e) provide a private right of action; (2) the second amended complaint states a claim under both statutes and (3) Defendant RadNet is subject to Md. Code Ann., Educ. § 13-303(e). ECF No. 25 at 10-22; ECF No. 26 at 5-12. Capitol Radiology also argues that dismissal of its equal protection claim in Count III of the second amended complaint is not warranted, because Defendants RadNet, UMMS and UM Capital are subject to state and federal equal protection law and these Defendants acted under the color of state law in connection with the Joint Venture. *See id*.

In addition, Capitol Radiology argues that the Court should not dismiss its antitrust claims in Counts IV and IX of the second amended complaint, because it has alleged plausible antitrust claims under Sections 1 and 2 of the Sherman Act and adequately pleaded antitrust an injury. ECF No. 26 at 5-7. Capitol Radiology also argues that it alleges plausible discrimination and unlawful bidding claims under Title VI and Section 1557 in Count VII of the second amended complaint. ECF No. 26 at 9-10; ECF No. 25 at 14-17. Capitol Radiology further argues that dismissal of its breach of contract and tortious interference with contract claims in Counts V and VI of the second amended complaint is not warranted, because, among other things, the Asset Purchase Agreement applies to the Joint Venture and UMMS should have known about the Asset Purchase Agreement. ECF No. 26 at 6-7; ECF No. 25 at 21.

Lastly, Capitol Radiology argues that the Court should not dismiss its claims for punitive damages in this case, because the second amended complaint alleges intentional torts and that the Defendants had "'the consciousness of the wrongfulness' of their actions," and the Court should also not strike the allegations in the second amended complaint, because these allegations are not

13

inflammatory or scandalous. ECF No. 26 at 10-12. And so, Capitol Radiology requests that the Court deny the Defendants' respective motions to dismiss. ECF No. 25 at 22; ECF No. 26 at 12.

For the reasons that follow, a plain reading of Sections 13-303(e) and (d) of the Maryland Code's Education Article shows that these statutes do not provide for a private right of action to bring a claim under these laws. A careful reading of the second amended complaint also shows that Capitol Radiology fails to state plausible claims against Defendant Advanced Radiology and that this pleading also fails to allege plausible equal protection and antitrust claims against the Defendants.

The second amended complaint also makes clear that Capitol Radiology fails to state plausible breach of contract and tortious interference with contract claims against the Defendants. Lastly, a careful reading of the second amended shows that this pleading lacks sufficient factual allegations to show intentional discrimination, to support Capitol Radiology's discrimination claim in Count VII of the second amended complaint. And so, the Court: (1) GRANTS Defendants Advance Radiology and RadNet's motion to dismiss (ECF No. 21); (2) GRANTS Defendants UMMS and UM Capital's motion to dismiss (ECF No. 22); and (3) DISMISSES the second amended complaint.

### A. The Court Dismisses The Second Amended Complaint As To Defendant Advanced Radiology

As an initial matter, Defendants Advanced Radiology and RadNet persuasively argue that the Court should dismiss all claims brought against Defendant Advanced Radiology in this matter, because the second amended complaint does contain sufficient factual allegations to support any causes of action against Advanced Radiology. Notably none of the causes of action alleged in the second amended complaint are brought against this Defendant. ECF No. 6 at ¶¶ 87-124. And so, the Court GRANTS Defendants Advanced Radiology and RadNet's motion to dismiss in this regard and DISMISSES all claims against Defendant Advanced Radiology in this case.

### B. Capitol Radiology Cannot Pursue Its Claims Under Section 13-303

The Defendants also persuasively argue that Capitol Radiology cannot pursue its claims pursuant to Md. Code Ann., Educ. §§ 13-303(e) and (d), because these statutes do not provide for a private right of action. Section 1303 of the Maryland Code, Education Article governs members of the UMMS Board of Directors. Specifically, Section 13-303(d) provides that: "[t]he

14

Board of Directors shall operate the medical system without discrimination based upon race, creed, sex, or national origin." *See* Md. Code Ann., Educ. § 13-303(d). Section 13-303(e) also provides that: "[t]he Board of Directors will conduct procurement activities consistent with minority purchasing standards applicable to State government agencies." *See* Md. Code Ann., Educ. § 13-303(e).

To determine whether a private right of action exists under these statutes, the Court considers: (1) whether Capitol Radiology is a member of the class for whose special benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, to create or deny such a remedy; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. *Baker*, 50 A.3d at 1122 (citing *Cort*, 422 U.S. at 78); *see also Aleti*, 279 A.3d at 921. None of these factors are present in this case.

Notably, a plain reading of Sections 13-303(e) and (d) makes clear that these statutes do not provide for a private right of action for Capitol Radiology to bring its Section 1303 claims in this case. Rather, both statutes provide general directives to the UMMS Board of Directors, regarding how to conduct procurement activities consistent with minority purchasing standards, Md. Code Ann., Educ. § 13-303(e), and the operation of the medical system "without discrimination based upon race, creed, sex, or national origin." Md. Code Ann., Educ. § 13-303(d). Given this, the statutes simply do not confer any specific benefit to Capitol Radiology, or other similar businesses. And so, the Court must DISMISS Capitol Radiology's claims against the Defendants based upon Sections 13-303(e) and (d).

**C. Capitol Radiology Fails To State Plausible Equal Protection Claims**

Turning to Capitol Radiology's federal and state equal protection claims in Counts III and VIII of the second amended complaint, a careful reading of the second amended complaint also shows that these claims are also not plausible. To state an equal protection claim under either the Fourteenth Amendment, or the Maryland Declaration of Rights, Capitol Radiology must allege facts to show, among other things, that that the unconstitutional conduct was performed by a state actor. *Lugar*, 457 U.S. at 923; *see Ashton*, 660 A.2d at 464; *Davison*, 912 F.3d at 679 (recognizing that the state action analysis and color-of-law analysis are synonymous). But, as the second amended complaint makes clear, Defendants UM Capital and RadNet are private corporations, not state actors. ECF No. 6 at ¶¶ 19 and 21. Capitol Radiology also fails to allege

15

any facts in the second amended complaint, to show that RadNet's decision to bid on the RFI and to engage in the Joint Venture could be attributed to either Defendant UMMS or to the State of Maryland. *See id.* at ¶ 67 ("How it came about that UMMS and RadNet entered a joint venture agreement to develop and open a competing outpatient radiology facility on the Laurel campus is not publicly known, and is not known to Capitol Radiology."). The second amended complaint also lacks facts to show that UM Capital's decision to issue the RFI can be attributed to the State of Maryland. *See id.* at ¶¶ 19 and 52 (recognizing that UM Capital has a Board of Directors that is independent from the UMMS Board of Directors). As the Supreme Court has held, merely contracting with a state is insufficient to render a private entity a state actor. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019) ("[T]he fact that the government… contracts with… a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function.") (citations omitted). And so, the Court must DISMISS Capitol Radiology's equal protection claims against Defendants RadNet and UM Capital, because these Defendants are not state actors.

The Court must also dismiss Capitol Radiology's equal protection claims against Defendant UMMS, because Defendant UMMS is immune from suit with regards to these claims. It is well-established that entities that are arms of a state are protected by sovereign immunity. *Will*, 491 U.S. at 70-71. In this case, there can be no genuine dispute that Defendant UMMS is an arm of the State of Maryland and, thus, subject to sovereign immunity. *See* Md. Code Ann., Educ. §§ 13-301, *et seq.*; Md. Code Ann., Educ § 13-304(b); *see also Jolivet v. Univ. of Maryland Med. Sys. Corp.*, No. CV WDQ-07-2359, 2008 WL 11509363, at *2 (D. Md. Mar. 17, 2008) (citations and internal quotation marks omitted) (holding that UMMS is governed by state law and does not manage itself independently from state control); *Hammons*, 551 F. Supp. 3d at 584, 587. And so, the Court also DISMISSES Capitol Radiology's equal protection claims against Defendant UMMS.

### D. Capitol Radiology Fails To State Plausible Antitrust Claims

Capitol Radiology's federal and state antitrust claims set forth in Counts IV and IX of the second amended complaint are also implausible, because the second amended complaint lacks sufficient factual allegations to show an antitrust injury. To have standing to bring a suit for damages for an antitrust violation as a private plaintiff, Capitol Radiology must show an "antitrust injury," pursuant to Section 4 of the Clayton Act. *Novell*, 505 F.3d at 311 (citing

16

*Associated Gen. Contractors of Cal.*, 459 U.S. at 535 n.31). An "antitrust injury" is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489. And so, to determine whether Capitol Radiology has alleged facts to show an antitrust injury and, thus, standing to bring its Sherman Act and Clayton Act claims here, the Court considers "(1) the causal connection between an antitrust violation and harm to [Capitol Radiology], and whether that harm was intended; [and] (2) whether the harm was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws." *Novell*, 505 F.3d at 315 (quoting *Kloth*, 444 F.3d at 324).

In this case, the second amended complaint fails to allege any facts that show that Capitol Radiology suffered an antitrust injury because of the Joint Venture. For example, the second amended complaint lacks facts to show that Capitol Radiology lost customers, lost revenue, or missed opportunities for patient referrals, because of the Joint Venture by and between Defendants UMMS and RadNet. *See* ECF No. 6 at ¶¶ 1-16, 31-37, 78-85, 101-104 and 120-124. The second amended complaint also lacks factual allegations to show a causal connection between any harm that Capitol Radiology has suffered and the Joint Venture. *See generally id*. Rather, the second amended complaint makes clear that Capitol Radiology is alleging that it will be harmed in the future, because of the Joint Venture. *See id*. at ¶¶ 103 and 122-123 (alleging that the joint venture "*will* have an adverse effect on consumers in Prince George's County because it will provide RadNet with the power to set rates for radiology and imaging services that reflect its monopoly power," that "[t]he increased rates will be passed through in the form of higher insurance rates for employers and individuals," and that "[t]he unlawful restraint of trade will have an adverse effect on consumers in Prince George's County because it will eliminate competition for professional services for the reading of imaging and radiology technical results.") (emphasis added).

Given this, the second amended complaint simply fails to allege facts that show antitrust injury. *See Novell*, 505 F.3d at 315 (citing *Kloth*, 444 F.3d at 324); *Brunswick*, 429 U.S. at 489. And so, the Court must also DISMISS Capitol Radiology's antitrust claims. *Novell*, 505 F.3d at 310-311.

### E. Capitol Radiology's Breach Of Contract And Tortious Interference With Contract Claims Are Not Plausible

Capitol Radiology's breach of contract and tortious interference of contract claims are also not plausible. To state a breach of contract claim, Capitol Radiology must allege facts to show: (1) a contractual obligation; (2) a material breach of that obligation; and (3) damages. *Class Produce Grp.*, 2018 WL 1471682, at *17 (citations omitted). In this regard, it is well-established that "a person cannot be held liable under a contract to which he was not a party." *Hosack*, 2011 WL 1743297, at *3 (citations and internal quotation marks omitted); *see also Snider Bros.*, 317 A.2d at 851. The Supreme Court has also held that a parent corporation generally cannot be held liable for the acts of its subsidiaries. *Bestfoods*, 524 U.S. at 61.

In this case, the second amended complaint makes clear that Capitol Radiology's breach of contract claim against Defendant RadNet is not plausible, because there is no dispute that RadNet is not a party to the Asset Purchase Agreement. *See* ECF No. 11-1 (showing the parties to the Asset Purchase Agreement are Capitol Radiology, Radiologix and WB&A Imaging Partners, Inc.); *see also* ECF No. 6 at ¶¶ 26 and 106 (alleging that RadNet "breached the [Asset Purchase Agreement] by failing to offer Capitol Radiology the right-of-first refusal for providing radiology services on the Laurel campus."). Capitol Radiology has also not substantiated its claim that Defendant RadNet is a successor-in-interest to Radiologix. *See generally* ECF No. 6. And so, Capitol Radiology cannot sustain a breach of contract claim against Defendant RadNet. *Hosack*, 2011 WL 1743297, at *3 (citations and internal quotation marks omitted); *Snider Bros.*, 317 A.2d at 851.

Capitol Radiology's tortious interference with contract claim is also problematic. To state a claim for tortious interference of contract, Capitol Radiology must allege facts that show: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional interference with that contract; (4) hindrance to the performance of the contract; and (5) resulting damages to the plaintiff. *See Fowler*, 598 A.2d at 802; *Macklin*, 639 A.2d at 119. Capitol Radiology must also allege facts to show both a tortious intent and improper or wrongful conduct. *Macklin*, 639 A.2d at 119 (internal citation omitted). But here, the second amended complaint lacks any facts to show that Defendants UMMS and UM Capital had knowledge of the Asset Purchase Agreement, or that these Defendants intentionally interfered with that agreement. *See generally* ECF No. 6. And so, the

18

Court must also DISMISS Capitol Radiology's claim for tortious interference with contract in Count VI of the second amended complaint.

### F. Capitol Radiology Fails To State A Discrimination Claim

As a final matter, the Defendants also persuasively argue that Capitol Radiology fails to state a plausible discrimination claim in Count VII of the second amended complaint, because the second amended complaint lacks facts that, taken as true, show intentional discrimination upon the basis of race. To state a plausible discrimination claim under Title VI and Section 1557 of the Affordable Care Act, Capitol Radiology must allege facts to show, among other things, that: (1) Defendant UMMS is a recipient of federal financial assistance and (2) the UMMS intentionally discriminated against it upon the basis of race, color, or national origin. *Evans*, 2021 WL 5326463, at *3 (citations omitted); *see also Lucas*, 128 F.4th at 221; *Taite*, 2024 WL 3200614, at *4 (to state a claim under Section 1557, a plaintiff must allege facts that state a plausible claim under Title VI). In this case, the second amended complaint simply lacks the facts necessary to establish intentional racial discrimination upon the basis of race with regards to the Joint Venture. Notably, Capital Radiology simply alleges in the second amended complaint that Defendants UMMS and UM Capital discriminated against it, because Capitol Radiology is a minority-owned business and the company was intentionally excluded from participating in the Joint Venture. *See* ECF No. 6 at ¶ 115. But such allegations, without more, are not sufficient to show intentional discrimination upon the basis of race. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-268 (1977).

The second amended complaint also fails to identify any state laws that require Defendant UMMS to provide public bidding for its contracts, to support Capitol Radiology's claim that the Defendants failed to provide for public bidding with regard to the RFI and the Joint Venture. *See* Md. Code, State Fin. & Proc. § 14-302(a)(1)(i)(1); *see also* Md. Code, State Fin. & Proc. § 14-302 (a)(1)(ii)-(v). Indeed, while the second amended complaint does contain factual general allegations about historical racial disparities related to access to screening with regards to radiology, the Court agrees with the Defendants that these facts are not sufficient to show intentional racial discrimination with regards to the Joint Venture. *See generally* ECF No. 6 at 9-10.

Given this, the factual allegations in the second amended complaint are simply not sufficient to plausibly allege a discrimination claim under Title VI and Section 1557 claim. And so, the Court must also DISMISS this claim.[5]

## V.     CONCLUSION

In sum, a plain reading of Sections 13-303(e) and (d) of the Maryland Code's Education Article shows that these statutes do not provide for a private right of action. A careful reading of the second amended complaint also shows that Capitol Radiology fails to state plausible claims against Defendant Advanced Radiology and that this pleading also fails to allege plausible equal protection and antitrust claims against the Defendants.

The second amended complaint also makes clear that Capitol Radiology fails to state plausible breach of contract and tortious interference with contract claims against the Defendants. Lastly, a careful reading of the second amended also shows that this pleading lacks sufficient factual allegations to show intentional discrimination, to support Capitol Radiology's discrimination claim in Count VII.

And so, for the foregoing reasons, the Court:

(1) **GRANTS** Defendants Advance Radiology and RadNet's motion to dismiss (ECF No. 21);
(2) **GRANTS** Defendants UMMS and UM Capital's motion to dismiss (ECF No. 22); and
(3) **DISMISSES** the second amended complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[5] To the extent that any of Capitol Radiology's claims survive the Defendants' motions to dismiss, the second amended complaint also makes clear that Capitol Radiology is not entitled to seek punitive damages, because there are no factual allegations to support such relief and/or punitive damages are not recoverable for the claim.